The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. Mr. Leland, good morning, when you're ready. May it please the Court, Counsel. My name is Daniel Gray Leland, and I represent the appellant, William Peterson, III. While it may seem like this is a novel case, I submit that it is nothing more complicated than a traditional rule of civil procedure 19 analysis. In fact, this Court previously addressed this very matter in the case of Yashchenko v. Harrah's NC Casino Company, 352 F Sup 2D 653, Fourth Circuit, 2005. Mr. Peterson was unlawfully terminated while working as a table games dealer at Harrah's Cherokee Casino. The casino was run by Harrah's North Carolina Casino Company, which in turn is run by Caesars Entertainment, one of the largest gaming operators in the world. He brings claims under the Federal Family and Medical Leave Act and the Uniformed Services Employment and Reemployment Rights Act, USERRA, two statutes meant to protect workers and veterans like Mr. Peterson. Harrah's seeks to evade liability by arguing that the Tribal Casino Gaming Enterprise, TCGE, an arm of the Eastern Band of Cherokee Indians, was Peterson's, quote, true employer and is a necessary and indispensable party. And because TCGE has sovereign immunity, the case must be dismissed. Harrah's operates the casino on tribal land under agreement with TCGE. That agreement grants Harrah's as the operator. Do we have that agreement? Did the district court have that agreement? That was submitted. I do not know the exact appendix number on that counter. So that's an old one, right? You put in an old one under kind of a different operating model than they have now, potentially. And I didn't see that Harrah's provided the current contract or management agreement. Did they? No, they did not. And that is one thing that I do want to address, the fact that it was dismissed without the opportunity for any discovery and not having that information, which I do believe is critical to this analysis. Who do you believe the burden of proof is on to show indispensability? Sure. The burden of proof to show indispensability when it comes to sovereign immunity is on the party claiming it. Right. Yeah, I was confused by the district court. Some of the reasons it gave were impairing the tribe's, you know, contractual interests with Harrah's, but we don't have the contract, and Harrah's didn't produce it. So I didn't really know what the court was talking about. And I would suggest one thing that's interesting about that is the court should not have been making determinations about what the interest of TCGE was. They have not come forward in the case to indicate that they have any interest at all. And I submit under the Rule 19A1 analysis. Yeah, but don't, I mean, we let courts, even sua sponte, decide, you know, that a third party has an interest. There might be a little conflict with saying you have to come forward with a certain document, you think? Well, what I would suggest is, and there is a Fourth Circuit case, I believe it's the Kyburn v. Murphy-Brown LLC, 980 F. 2nd, 937 Fourth Circuit, 2020, which was a Rule 19 analysis. And the court there noted that speculation and guess about what an interest might be is inappropriate in conducting that analysis. So you don't lose if they just have an interest, right? No.  I do want to say that there's three points that I believe mandate and compel reversal here. First, Harris was Mr. Peterson's employer under federal law, under claims allowing for joint and several liability, and that the district court's new definition of employer that it used in this case, applying it to TCGE, is wholly untenable on its face. Second, of course, that Rule 19 was misapplied because TCGE is not a necessary nor an indispensable party. And third, any determination of extending tribal sovereignty would require fact findings. And we're not done here. Just so that I understand the framework here, as I read the district court, it found, in face of what seems like to me some conflicting evidence, that the tribe, I know you all use acronyms, but I'll use tribe. Hopefully you understand the tribe and the enterprise there. The tribe was the employer. Was that a finding of fact that the district court made, that the tribe was the employer? I think I would submit that that's a conclusion of law that should be under de novo review. It might later, if there's a record, it would be a mixed question of fact and law, I believe. But in this context, I mean, we can make jurisdictional fact finding, right?  And here we've got fundamentally two pieces of evidence. We've got a declaration as to how the operation works now. And that's some evidence that the tribe is the employer. And on the other side, you've got 1996, whatever year it is, operating agreement that sort of suggests the other way, right? Suggests that maybe the private entity is the employer. I totally get, like, either of those seem plausible to me. But here it seems like the district court credits the declaration. And that might or might not be of what I would have done given the evidence that was before it. But the choice to credit the declaration over the agreement seems like one that we have to look at for clear error. And so that's where I'm, like, struggling a little bit. I understand the arguments that, like, maybe more evidence should have been submitted. You know, maybe. But, you know, this is what the district court had. It was, you know, called upon to make a determination. It's entitled to do that under 12b-7. Just like we make jurisdictional fact-finding, we can make fact-finding in this context. And then I'm sort of stuck in this world where I say, you know, doesn't seem like a ton, but the district court made a finding. And we ought to review that for clear error. Help me understand why that doesn't, like, sort of resolve the case. Sure. And that's a good question. Thank you, Your Honor. What I would submit first is that obviously you can read the district court order, and it's certainly light on facts. And I think it makes a huge stretch there. I understand that. Okay. But, I mean, it says this, right? And it says that, you know, the declaration is evidence of the agreement. And even viewing that evidence in the light most favorable of the plaintiff, it shows that the tribe was the employer, right? And that's what it says. I don't think that's what the agreement says. No, no, that's what the order says. I was literally reading from the district court's order when I just said that, right? I'm just repeating what the district court said. And it's crediting one piece of information. You gave a different piece of information that it does not credit. All right? What do I do with that? Well, what we know is that, and this is from the appellee's own findings, is that Harris has exclusive authority over everything related to employees, over hiring, over firing, over supervision, over policies. And the evidence of that is this 1996 agreement. And in addition to that, appellee effectively admitting to that at oral argument. What appellee says at oral argument. Effectively? I'm sorry, say that one more time. Well, what the appellee said at oral argument. But is that evidence? Like, what I'm trying to understand is, like, what's the evidence that we're looking at? Everybody wants to say my opponent effectively admitted that they lose, right? Rarely did they actually do that. But what is the evidence other than the agreement on the one hand and the declaration on the other? There's lots of other talk about things, but it seems like it's just these two pieces of evidence and the district court has to, like, decide because they're in conflict. I don't see how they're in conflict as an initial matter. Okay. So that's an argument. The district court doesn't seem to take that tack, but that's an argument. Is there anything else? Like, help me understand. So I understand that argument. They're not your view that maybe they're not in conflict. What else am I looking at to sort of understand why there's clear error to choose the declaration over the agreement? Again, and what I would suggest that it should be under de novo review. And I think what has happened with courts lately, this circuit. De novo review in deciding to credit one set of evidence over another set of evidence? I don't know when you keep saying that the district court was crediting evidence that said what? Defendants have credited evidence of a management agreement, and that evidence clarifies that, that evidence being the declaration. That evidence clarifies, and it makes three factual findings that lead to, inextricably lead to the conclusion that the tribe is the employer, right? I mean, it uses an acronym, so it's hard to follow. But ECBI has delegated its obligations and rights under the management agreement to the tribe, right? Peterson was employed as a table game dealer by the tribe at Harris. All tribe employees, including Peterson, are employees of a tribal enterprise. Those are, like, factual findings that it's making. And the court's basis for those factual findings were based on two things. One, that Harris wrote, excuse me, that the TCGE wrote the checks, and that TCGE administered drug tests before people were hired as they're required to under the Gaming Rights Act. That's what the conclusion was based on. I'd submit that those two things do not make the tribe to be an employer. If you look at the definitions under the FMLA of an employer. And so your response to me is that the declaration, you've picked two things the declaration says. It's not everything the declaration says, but that's fine. But that the declaration isn't sufficient if it was standing alone to establish that the tribe was the employer. I would say yes, and I would say that all the declaration says is that the tribe did the payroll checks. They don't say they had any control at all whatsoever over any employment decision. It's based on the fact that they wrote the checks and they did drug tests. I'd submit that that can't be the definition of employer. If you look at statutory definitions under the FMLA, under USERRA, they're broad definitions. But the TCGE, I'd submit, doesn't meet those definitions of an employer. Do you concede that if the tribe is the employer, the tribe is an indispensable party? No. Tell us why, if the tribe is the employer, it's not an indispensable party here. Certainly. What I direct the court's attention to is a Fourth Circuit case from 2019, Williams v. Big Pitcher Loans, 929 F. 3rd, 170. And what the court did there was just because someone says, I'm an employer, that doesn't necessarily confer tribal sovereignty. In Williams v. Big Pitcher Loans. I guess I'm not asking about, I mean, the tribe has sovereignty, and the district court said the tribe is the employer. But there's also this agreement where the tribe delegated to HERA's responsibility for managing the employees. And the district court in the hearings seemed to be discussing a very plausible concept where the plaintiff could sue both of them or either of them, and the tribe and HERA's hash it out in their management agreement or some other indemnification agreement about who ends up on the hook for that. But that's not really the plaintiff's problem. The plaintiff could sue your argument, as I understood it, was the plaintiff could sue HERA's because it's also an employer under the statutory definitions. Even if the tribe is the true, right, who pays the paycheck, who actually hires and fires. Well, the tribe doesn't make the decisions to hire and fire. They don't make those decisions at all. How do we get to a true employer simply because of payment of a check? Could the district court order reinstatement without the tribe as a party? It doesn't seem likely, right? The tribe could say, we're not going to, we are the employer, we're not going to employ this person. But that, again, doesn't make them an indispensable party. There are ways around that. And I'm trying to disaggregate whether you think the factual finding that the tribe is the employer syncs you on necessary and indispensable party or whether those two are separate. Part of the Rule 19 analysis is to say that they're separate. And even if the court would find that TCGE was an employer as well, I suggest that they're not. They don't meet the definitions of an employer. But even in that case, because these claims, FMLA and USERA claims, love for joint and several liability, the tribe doesn't, is not a necessary and indispensable party. The very first part of the Rule 19A analysis is whether or not the court can afford complete relief in the absence of the current then non-party. And under joint and several liability, the court could. Excuse me, TCGE does not need to be involved at all in the decision about these FMLA or USERA violations. What I'd submit to the court is in Ushanko, if we look at what the court did in Ushanko, the court knew when to say there was necessary and compulsory jointer. It did that in the tribal preference hiring policy. When this court addressed the FMLA claims, it didn't look at all to whether or not that was an employer. Are you challenging any policies? Is this just one plaintiff? It's not a proposed class action or anything? Yes, it is a single plaintiff under FMLA and USERA. What was the district court talking about when it said TCGE would be able to continue enforcing the policies to which Peterson takes issue? What policies do you take issue with? I don't know exactly what the court said there. I assume it's saying something about enforcing not following FMLA or USERA. That's as best as I can make sense of it. The prior cases in the Western District, they were about policies, but not your case. Other cases in this similar fact pattern that have come out of the Western District have been challenging policies, but I didn't see anything in your complaint challenging any policy of HERA's or the tribe. No, that would be correct. In seeing the counsel, Judge Richardson, my dear colleague, was asking questions about this declaration. A lot of this declaration, we don't have to give that kind of credence to that, nor should the district court. They're making conclusions. It says, basically, I'm telling you that the employer is the tribe. That's a legal conclusion. That's what we're here for. That means you could have any declaration, well, I'm telling you right now, I don't care what they do at the casino, the tribe is the employer, and put it in writing and sign it. Then we say, oh, well, the judge used that. I mean, no factual question in terms of that. Why didn't you put in a declaration? Why didn't you put a declaration? I'm just asking. I'm interested. To me, I practice law. If everybody's going to start playing music, I may as well join the band, too. Is my question quizzical to you? When they put in this declaration, you could do the same thing. You could have people, other employees, say, yeah, my manager's this person. My foreperson is this. He's the one, or she tells me what to do, and those kind of things like that. Declaration. So then, question there, we're supposed to now bend to this one that's basically conclusions. Go ahead. I'm just wondering. Sure. Well, what I would submit is, and what you said when you started that comment was that this is a legal conclusion, and I believe that's the case. If it was as simple as us providing an affidavit saying what we already know, the fact that Harris has complete and exclusive control over everything that he did over his firing and termination, we could contest that, but that seemed inappropriate to supplement the record at that time. But just to be clear, you did not submit a declaration to that effect, right? So you didn't submit a declaration of a person with knowledge as to how the system operated, right? So your client did not submit a declaration that said, you know, my checks came from Harris or that my directions came from an individual I knew to be a Harris employee or that I got directions from corporate Harris or whatever it is that, you know, I was led to believe that I was an employee of Harris. None of those things were in a declaration that you submitted. Correct, Your Honor, and I just encourage you to remember the procedural posture of the case. It was on a motion to dismiss, a motion based solely upon the complaint. But Rule 19 permits fact-finding, right? And you sort of acknowledge by submitting the operating agreement from 1996, and as I think Judge Gregory is suggesting here, you know, they submitted a declaration. You could submit a declaration. That's sort of what we do at the jurisdictional, you know, initial proceeding posture is we take somebody with knowledge and they give us the information the best they can. And so you weren't prohibited from doing that, right? I missed the question. You weren't prohibited from submitting a declaration from a person with knowledge as to, like, how the system operated. I submit that I believe, I mean, the reason why we didn't is that it would be inappropriate to do that on a motion to dismiss. I understand certain things can be added on a Rule 19 motion. Your view is it's inappropriate to submit a declaration from a person with knowledge in a 12B7 setting? On a motion to dismiss based upon a complaint, yes. Did you object to this declaration? No, Your Honor. But I guess the question is that because the tribe is an employer, it doesn't mean that there can't be another employer. There are cases where you can have more than one employer. Correct? Correct. And, of course, that is what this Court said in Yesheko. Exactly. All right. Thank you, Mr. Leland. Thank you. Mr. Clay. May it please the Court, Counsel, thank you, Your Honors, for your time and attention today. Are individuals who are employed in the casino gaming enterprise in casinos located on tribal land, employees of the tribe such that their employment claims must be brought against the tribe, and does the tribe's tribal sovereign immunity, which forecloses their participation in the litigation, require dismissal? Every single case in which a court has been asked that question, the answer has unanimously been yes. Mr. Peterson requests this Court to find abuse of discretion because the district court in our case reached the same conclusion. So you're saying that on your position that if there was just blatant sexual harassment, I mean blatant such, then there would be total immunity. If an employee is physically and sexually assaulted in employment, course of employment, there would be complete immunity, none of the protection of Title VII, none of those things. Here's FMLA and, you know, those are federal label stands. But is that your position? It's our position that Mr. Peterson has the right to pursue his claims against the tribe. No, that's not what I asked you. It's a hypothetical. I know it's not this case. I want you to answer my hypothetical. You're saying that if a person is brutally, sexually assaulted in the course of employment, that there's complete immunity. No, Your Honor, to the extent that the employer is not a tribal sovereign nation that is immune from suit under Title VII. In fact, the Delaware-Vendera decision— No what? No what? What's the no to? I thought that sounded like a yes you were going to say. No, the employer is not immune from suit under Title VII if the employer is in fact that plaintiff's employer. That's what I'm saying. You're saying that they're not the employer on any situations. That's your position, isn't it? It's our— Because you said step one, they're the employer, and two, they have sovereign immunity. In that framework, my hypothetical, why wouldn't they be immune? Even if it's a blatant sexual harassment in the workplace. If the hypothetical relates to the tribe as the employer? No, it relates to the person that's in the—I've got to put it in the context of hypothetically the casino because that's what we're talking about in the case situation. So it's our position that an individual who is employed by an employer who is not a tribe and therefore does not have— So you're not going to answer my hypothetical? I'm trying, Your Honor. I think he's asking where would they sue the tribe? They have the right to sue the tribe in tribal court under tribal law. And nothing that occurs— And nowhere else, right? Your point here is like that's what a tribe is, right? They're like yes, if you bring a sexual harassment case against the tribe, it is immune in federal court. That's our position, and that position has been recognized by the United States Supreme Court. That's sort of not controversial, that if you sue a tribe, it has immunity in federal court. And that's true whatever the statute is, whether it's FMLA or Title VII or whatever statute we're talking about. If you sue a tribe in federal court, it has immunity. That is our position. Unless it's abrogated by an act of Congress or the tribe, it waives that immunity. Mr. Peterson argues— But they can go to tribal court and seek relief in tribal court. Yes, Your Honor, that's true, and there's no preclusive effect that this litigation has on Mr. Peterson's ability to pursue his claims. Then why did you say they have sovereign immunity then here? The tribe is a sovereign nation and can only be sued within its own sovereign jurisdictional setup, tribal courts. And so Mr. Peterson has the opportunity and, in fact, may already be pursuing his claims against the tribe in tribal court. And nothing that occurs here, whether it's in Mr. Peterson's favor or not, precludes him from pursuing whatever relief might exist under tribal law against the tribe arising out of the exact same operative facts. But he hasn't sued the tribe here, right? So we're talking about Harris. And who has the burden to prove that the tribe is necessary and indispensable? That's correct, Your Honor, and we believe— You agree Harris has that burden? Yes, we— So the burden to introduce evidence and prove all of the requirements, that's all on Harris? Yes. It's not the plaintiff's burden at all? Yes, Your Honor. We agree that under Rule 12b-7, the court can consider, and the district court properly did consider, evidence outside of the four corners of the complaint. And its findings were mixed findings of fact and law. It determined that the tribe was the employer, but in making that determination, it relied on the limited factual record that was presented to it. So what did the court rely on when it said that any judgment would impair the tribe's contractual interests with Harris? That it would be prejudiced in its absence because it would interfere with its ability to resolve its contractual obligations with the tribe? What evidence did the court rely on to make those conclusions? I would submit that the declaration of Ms. Bridges addresses that the management agreement currently in place, or in place at the time— It does? Does it have the contractual—did she attach the contract to her declaration? No, Your Honor. Or mention any contract provisions that would be impaired? Under Paragraph 7 of her declaration, she says that the management agreement expressly provides that these individuals are tribe employees— They're employees, right. —and not Harris employees. She did not attach— So, House, so your position is that's the only contract interest the court is talking about? Just the provision of the contract that says these are tribal employees? Yes, Your Honor. That may have been all that the district court considered, but that was sufficient for this court and the U.S. Supreme Court to consider. The Yushchenko decision on the Section 1981 claim, that was sufficient for the Dowell-Vendera— No, it wasn't. I mean, in Yushchenko and in the two magistrate cases from the Western District, these were all cases challenging a policy that was in the written management agreement, or class actions challenging the FMLA policy that was being—right? So that's what the court in those cases was talking about, the policy. The court had the management agreement in front of it and was saying this contractual provision and this contractual provision will be impaired. This is how the tribe is indispensable to this litigation. Its rights are being determined by this litigation. But here we don't have the management agreement. There's no policies being challenged. And as you know, in Yushchenko, the FMLA claims went forward. So help me understand why those cases, why all of that applies here. This seems to me like a very different context with a very different factual record. We would agree with you that Yushchenko is different. The facts actually bear that out. In the Yushchenko decision, the reason why the court wasn't considering Rule 12b-7 dismissal or Rule 19 joinder analysis is because it was never raised by Harris. And the facts actually establish why. In that case, the factual record showed that Mr. Yushchenko was hired in 1994 before even the 1996 version of the agreement was in place. That was the leasing of employees and staff, not the— Correct, Your Honor, the leasing of employees. But the record established that he was hired by Harris, was employed by Harris. And, in fact, the reason why his position was eliminated as the court in Yushchenko recognized was that beginning in 2003, these positions in the casino were being transitioned from Harris jobs to tribal jobs. So is it your position that just by proving that the tribe is the employer, you have proven that the tribe is a necessary and indispensable party? You didn't need to show anything else? No, Your Honor. Under Rule 19b, there are multiple factors that the court could consider. It's an illustrative list. The court need not consider all of them. But I would note that those factors need not be weighed heavily when the basis for infeasibility of joinder is based on immunity. That's what Clark and Humble both provided, relying on the Kaskali Ninth Circuit Court of Appeals decision and the Enterprise Management Consultant's Tenth Circuit Court of Appeals decision. Yeah, I mean, Clark and Humble, though, those were different factual circumstances, class actions, challenging policies. So you might need to apply that to this particular case. And we believe that the district court did so. The Kaskali decision provides that when immunity is the— To me, red light, kind of a no disrespect at all to this district court. I love this district court. But a little bit like a cut and paste from Clark and the other magistrate judge decision. And when he's talking about contractual provisions and policies, that applied in those cases, but it doesn't apply here. There is no tribal hiring preference policy at issue here, which was the issue in Yeshenko and the issue in Dawa Vandara. But we would submit that it is not substantially different and no clear error occurs. So what is the policy? So Judge Rushing asked your colleague, when the district court says the tribe would be able to continue enforcing the policies to which plaintiff takes issue, what do you—does that have meaning? Like, what does that refer to? Obviously, if it was a hiring preference, that is an obvious answer. But when it says the policies to which plaintiff takes issue, what do you understand that to mean? Our understanding of that was that Mr. Peterson in this case is challenging the decisions that were made by individuals within the casino who, based on the declaration from Ms. Bridges, were themselves tribe employees. But why would that be? Help me understand that, because that doesn't seem to match up, right? That seems to agree with your colleague over here. There were no policies, right? These are just, like, individual one-off decisions. Is that—help me understand. Like, your answer to me is, like, the policy is the as-applied decisions. Well, that suggests that's not a policy decision. That's just, like, a one-off decision. We would suggest that the court did not abuse its discretion by extrapolating from Clark and from Humble that what was challenged here was individual conduct. So there are no policies. You can't identify any that are being challenged here. To the extent that there is a policy at issue, it's the provision within the management agreement that states that these individuals are tribe employees and not Harrah's employees. And so it's possible that the court was contemplating that provision when it provided that language in its order. Why didn't you attach the contract? You know it's your burden. We do know it was our burden in Clark and in Humble, actually. You're talking about another case. I'm talking about this case here. You're always deflecting. I'm talking about this case. You have this declaration here. Why didn't you attach the contract? Because the burden is on you and all inferences are drawn in favor of the non-moving party. Why didn't you? It was a choice. Nothing in there that would help you? Was that the reason? I'm sorry. Was there nothing in there that would help you? That's why? Why? No, it's not that we don't believe that it would help us. It's that we believe that Ms. Bridges' declaration and her sworn testimony was sufficient. In fact, that was the same that was relied on in the Clark and Humble decisions was sworn testimony from an individual in an HR capacity regarding the context. Well, I think Judge Rushing has laid that out the best that I could ever come close to do it. So, that's totally an opposite in this case about those things. But anyway, I just wanted to ask the question. I want to be fair, ask the question to the other side. I'm asking you. Go ahead. And it is a fair question. And we would submit that those findings, in fact, are reviewed on an abuse of discretion standard. And the court correctly noted that on the other side of the record, there was nothing more than what we would consider to be inadmissible hearsay evidence. Can I ask you one more question about another statement of the district court that confused me? Absolutely. The district court said that Harrah's would be prejudiced by the tribe's absence because of judgment. And the absence of the tribe would interfere with Harrah's ability to resolve its contractual obligations with the gaming enterprise. What does that mean? What are Harrah's contractual obligations with the gaming enterprise that would be interfered with? Ability to resolve its contractual obligations. We would submit that the contractual obligation at issue is the provision that provides that these are tribe employees and not Harrah's employees. So, how would a judgment, an FMLA judgment, and the tribe's absence interfere with that? Necessary in a determination of liability here is that Harrah's and Caesar's were the employers and not the tribe. And so, that interferes with the provision of the agreement that says the opposite is true. That is our understanding of that. So, you disagree with the idea that under the FMLA, a plaintiff can sue someone acting on behalf of the employer? We do not disagree with that position. However, the case law and the statutory provisions that Mr. Peterson cites in his appellate briefing establish only that under the FMLA, an individual, a person, could be considered a joint employer in certain circumstances under the FMLA. It seems to me the tribe may not be impaired at all. I mean, if there's a judgment against Harrah's for, you know, the way that they handled the employment relationship or even telling Harrah's you have to pay money or you have to rehire this person, Harrah's comes to the tribe and the tribe can say, you know, too bad. We don't have to hire anyone. This is not a judgment against us. It's a judgment against you, Harrah's. Now, you guys may have an agreement that works all this out, but we don't have that and we don't know about it. So, how does it impair the contractual obligations? Can you ask that question again? Sorry. I see how Harrah's might be left holding a bag here and might be inconvenienced, but how does it impair the tribe's ability to protect its own contractual interests? In this case, the tribe's contractual interest is in preserving the provision of that agreement that states that these are tribe and not Harrah's employees. How does it interfere with that? They can still have that contractual provision. They can still enforce it. It doesn't say, you know, it doesn't take away any of their employees. Just practically, this Rule 19 is a very practical question. So, practically, how does it impair the tribe's ability? From a practical standpoint, because the tribe paid Mr. Peterson's wages, any sort of adverse judgment in Mr. Peterson's favor regarding It's not just money, right? I mean, the answer is the court, what they've asked for is reinstatement, right? So, they've asked the district court to order Harrah's to rehire him as a table dealer. And if Harrah's is not permitted to do that under the operating agreement, right, then that is like puts them in conflict with the tribe. Can that be avoided by how the court shapes the relief? We don't believe so. Mr. Peterson is the master of his complaint, and the relief he seeks here is wage-related damages, which, if awarded, would have to be paid by the tribe, who is absent from this litigation, and reinstatement. No, it would be a judgment against Harrah's. The district court wouldn't be telling the tribe to pay any money. It would be telling Harrah's to pay the money. And under Rule 19, the court needs to determine, and it did in this case, whether or not the relief would be effective in the absence of the tribe. Because the record before the district court showed that the tribe, at all times, was the payor of Mr. Peterson's paychecks. That might be, like, too bad for Harrah's. It has a judgment against it telling it to pay this gentleman, but surely there's an agreement with the tribe about how that sort of thing will be sorted out when the tribe is given Harrah's responsibility for all employment matters. That may be possible. The record does not include the current version of the agreement and what indemnification provisions may or may not apply here. But I would submit that the purpose of Rule 19 is to avoid an outcome like that, where both the district court and Harrah's would be stuck. But that's kind of like joint and several liability, right? That's never a reason to make a party indispensable. The fact that, well, there's someone else who actually owes this money to, or someone who's indemnified the defendant, that kind of is the defendant's problem. And Mr. Peterson raises this joint employer theory for the first time on appeal. He never raised it before the district court, and so it was not afforded the opportunity to consider those arguments. I would submit that it's not properly before this court either. Nonetheless, even if we want to address it, Mr. Peterson relies on FLSA case law that provides that, in certain contexts, an individual can be considered a joint employer. He relies on FMLA case law that provides only that, in certain contexts, an individual can be considered a joint employer. And he relies on USERA statutory language that provides that, in theory, joint employment is possible. But he does not counteract or cite a case that reaches the opposite conclusion of the Manzano decision, which found that, in that case, the tribe at issue there was the, not a joint, employer of the plaintiff. And even if this court were satisfied with an argument that was not raised before the district court, and therefore there's no abuse of discretion that the district court did not consider it, even if it were satisfied with this joint employer argument here, the Gillian v. Coke trucking decision in the District Court of Maryland provides that, even in those circumstances, where an absent party who cannot be joined because of immunity, in that case the school board, was no more than a joint employer along with the named defendants in that case, Rule 19 still rendered them an indispensable party and required dismissal of that case. Importantly, taking into consideration that the plaintiff in that case had adequate relief, even if dismissal occurred. In that case, the plaintiff had the ability to pursue his claims against all of the joint employers, including the school board, in state court, where the school board was not immune. Same here, where Mr. Peterson is not precluded, regardless of the outcome of this case. So your argument is that because the tribe is the true employer, therefore the tribe is indispensable. Because the tribe is the true employer, it is necessary. Because of the analysis of the factors. You haven't put forth a case that is necessary. You don't have any contract here. It's just unbelievable that you said that you can do that without even putting in a contract. You don't even have the facts in the record to support that. You said you have this really bare bones declaration that just basically says that, well, we're the employer. But how does that, in terms of they're indispensable, in that sense? I'd like to answer your question. I'd note that I am over time.  Okay. So you are correct that under Rule 19A, they must first determine necessity. And in that, under those circumstances, the court considered that the tribe had an interest relating to the subject matter of the litigation, such that their absence impaired or impeded their ability to protect that interest. It followed the rubric that was laid out by Clark and by Humble in finding that it has an interest, as Mr. Peterson's employer, in defending against his workplace claims. That's because they put forth a case that said that it would be inconsistent with the tribe's policy and interrupted. You don't have that case here. They have, in terms of choosing, in terms of hiring preferences there, they say we could not fulfill that with a trial board request. You don't have anything in this record here that is something about what happened in terms of the employment environment that interferes with the tribe at all. That's what Judge Rush was going through. And the burden is on you. Yes, Your Honor, we agree that the burden is on us. That thing is so glaring and unbelievable that you didn't put the contract in. If something is indispensable, I mean, that's the sine qua non. This is why. These are the things we couldn't do under this contract if they're not here. These are the things that you want to come here and say, well, I don't need to put you anything. We just said that with this declaration and we're supposed to as a court in a case like this. These are very important. The FMLA is very important. It's made a big difference in terms of employment, in terms of people being able to take care of families and take care of their health issues and work. They're not small issues at all. You can't be whisked away in terms of your burden. I'm about to say something, but never mind. You're smiling. I'm just wondering why you didn't put the contract in and you say that's so important to your case. We believe that Ms. Bridges' testimony, based on her knowledge of the contract and the employment arrangement, is sufficient. She testifies that they were hired and fired by the tribe. The background check was used.  I mean, in terms of hearsay, the document, you put the documents in. I mean, that's one-on-one, right? We would note that Mr. Peterson never raised that objection below. The court couldn't consider it. He didn't raise the objection. We're looking at it in terms of what it is, in terms of your evidence. Yes, Your Honor. And we would also argue that we provided the district court. Your time is up, but go ahead. Finish your last thought. I'm sorry. We also provided the court, and the court below considered, the gaming compact, which itself is a contract between this tribe and the state that requires that these individuals be hired, fired, be managed and supervised, and have their licenses maintained by the tribe and not by anyone else. And so, to the extent the court feels that contractual language is necessary for us to satisfy our burden, we provided that with the district court for its consideration. Licensing is not an issue in this case. But go ahead. No, no, that's fine. Thank you so much, Mr. Lee. Thank you, Your Honor, for your attention. Do you have anything further? You have time reserved. Do you have anything further? May I have a moment, Your Honor? Sure. Obviously, it was a question. I know I have very little time here. The one thing that I just want to comment on really quickly is, it seems to be that we're operating on an assumption that even if someone just sues a tribe, they have immunity in federal court. That's simply not true. I'd encourage this court to review its recent decision in Williams v. Big Picture Loans. I've mentioned it before. 929, F3rd, 174, 4th Circuit, 2019. In that case, it was looking to see if something was an arm of the tribe. And it went through the five breakthrough factors. You haven't disputed that here, have you? That the gaming enterprise is an arm of the tribe? Like, we're just not there yet in this litigation, are we? I'm sorry? Are you asking us to conclude the gaming enterprise is not an arm of the tribe? No. Okay. What I'm suggesting is that Harris certainly isn't. Right. Yes. Does anybody argue that Harris is an arm of the tribe? I don't understand that.  It's saying that Harris should not – they're trying to attach sovereign immunity to Harris, saying that it's a subordinate economic interest and arm of the tribe. Did someone argue that Harris is an arm of the tribe? Well, how else does sovereign immunity apply? Well, they're trying to say that the tribe is an indispensable party, and therefore you don't get to proceed. That was the whole premise here.  But not because they're not an arm of the – I mean, I guess I don't follow that at all. Sure. I wouldn't fight sovereign immunity if I were you. I understand that. I am commenting, however, that the court has looked at whether or not sovereign immunity applies to certain entities that are of tribe. And I think, ipso facto, it should apply with more force here if the courts have looked into – Do you agree the gaming enterprise has sovereign immunity? If you sued the gaming enterprise, could you do that in federal court? No. Right, because it has sovereign immunity.  Okay. The only other thing I think is slightly confusing is the policy that seems to be suggested that might be infringed is a simple statement, well, there are employees, and I think that's a little bit circular. I want to refer the court to – Why isn't the policy that, like, we can fire employees at will? Right? So the policy is that, like, we can fire people. Right? We, the enterprise, can fire people. And there may be limits for other people firing people for bad reasons, but we as an enterprise can fire people for whatever reason we like, subject only to tribal courts. Right? Why isn't that, like, the policy? I mean, we might not like that policy, but that sort of seems like the policy that the enterprise has suggested. I see that my time is coming up, but what I would suggest is – I'm sure Judge Gregory would be happy to let you answer the question. Absolutely. And you realize this is a counterfactual question Judge Richardson asked you, or hypothetical, in a sense, because they haven't put forth that policy. But go ahead. Answer the hypothetical. Well, I didn't quite understand that it was hypothetical. Well, he was saying if the policy was we'll be able to, because we're the tribe, and if we're the sole employee, we could just fire you, just say the sky is blue, you're gone. And therefore, if we had to be under the auspices of fairness and justice and all the federal arrangements to protect employees, that would hurt us from being able to just say you're gone. That's really the question. And why is that not a policy to be protected by here? And therefore, you shouldn't be able to sue them because they're indispensable. Sure. And I would say it seems like there's some disagreement about the application, but I believe the big picture loans does specifically address that. I'm familiar with those cases. The loan cases? I've had a lot of those cases. The payday loan cases where it depends on the facts. That's not what Judge Richardson is asking you. Go ahead. Answer the question. You can go back to my question or Judge Gregory's question. They're different questions, but you can answer either one of them. Please answer Judge Richardson. Sure. What I will say is I just would refer to an observation by the Second Circuit Court of Appeals that it made in one of the payday loan cases, which is a tribe has no legitimate interest in selling an opportunity to evade state law. And to answer the question, I think that I believe does address it. When it's looking at the interest of the tribe to say that the tribe's interest is selling the ability to evade state law is a different thing here as applied to Harris. Seeing that my time is up, in conclusion, we recommend that the district court be reversed and this be remanded for future proceedings. Thank you. Thank you, Mr. Leland. Thank you, Mr. Clays, for your argument. We'll come down to Greek Council and proceed to our last case of the term.
judges: Roger L. Gregory, Julius N. Richardson, Allison J. Rushing